UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ISRAEL GOMEZ,

v.                              Case No. 8:03-cr-111-T-17MAP
                                         8:06-cv-2357-T-17MAP

UNITED STATES OF AMERICA.

_____

O R D E R

This cause is before the Court on Israel Gomez's amended 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence. (Doc. cv-9; cr-128). A review of the record demonstrates that, for the following reasons, the motion to vacate must be denied.

PROCEDURAL HISTORY

On March 25, 2003, an indictment was returned in the Middle District of Florida charging Gomez and Enrique Balderas with possession of 100 kilograms or more of marijuana with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(vii) and 18 U.S.C. § 2 (count one), and conspiracy to possess 100 kilograms or more of marijuana with intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 846 (count two). Doc. cr-1.

On April 14, 2003, the Government filed a notice stating that Gomez was subject to enhanced penalties pursuant to 21 U.S.C. § 841(b)(1)(B) because he had a prior conviction for a "felony drug offense."[1]  Doc. cr-12.  At a status conference held on April 25, 2003,

_____

[1] In January 1999, Gomez was convicted of delivery of cocaine, possession of cocaine, delivery of cannabis, and possession of cannabis. Doc. cr-12; Doc. cr-107 at 211-14.

Gomez's counsel made an oral motion to continue trial and waiver of speedy trial through December 31, 2003. Both motions were granted by this Court. Doc. cr-18. Later, at another status conference held on August 15, 2003, Gomez's counsel again made an oral motion to continue trial and waiver of speedy trial - this time through May 31, 2004. These motions were each granted by this Court. Doc. cr-32.

On November 14, 2003, Gomez's counsel filed a motion to suppress any and all items seized during the search of Gomez's person. Doc. cr-38. Prior to the start of trial, this Court held a suppression hearing. Doc. 105, pp. 10-67. At the conclusion of the hearing, the Court denied the motion to suppress. Doc. 105, pp. 67, 68. 5. After a joint trial, Docs. cr-57, cr-58, cr-60, cr-63, cr-105-08, the jury found Gomez guilty on both counts and found his co-defendant, Balderas, not guilty on count one and guilty on count two. Docs. 73, 74, 86, 88; Doc. 108 at 195-204.

On May 17, 2004, this Court sentenced Gomez to 127 months in prison on counts one and two, to be served concurrently. Docs. cr-81, cr-88; Doc. cr-101, p. 46. Gomez directly appealed the final judgement to the United States Court of Appeals for the Eleventh Circuit, Appeal No. 04-12706-DD.[2]

Gomez raised the following issues on appeal:

a. Whether Gomez was denied his right to due process and a fair trial by the Government's presentation of prejudicial evidence and improper comments to the jury;

b. Whether the district court's application of the federal sentencing guidelines in determining Gomez's statutorily-mandated sentencing guideline range violated the fifth amendment indictment and due process clauses and the sixth amendment right to jury trial, where the district court imposed an eight-level upward adjustment in the base offense level premised on a quantity of

_____

[2] Gomez's brief is attached as Attachment 1. The Government's brief is also included as Attachment 2.

drugs not charged in the indictment and as to which Gomez did not waive his trial rights;

c. Whether the district court erred in failing to give the jury the lesser included instruction that Gomez had less than 100 kilograms of marijuana; and

d. Gomez adopted "the issues, statements of facts and arguments set forth in . . . Balderas's brief" without presenting any argument to support his contention that the evidence is not sufficient to support his convictions on either the conspiracy count or the possession count. See Attachment 1.

On November 22, 2005, the United States Court of Appeals for the Eleventh Circuit affirmed the disposition of this case, *United States v. Balderas*, 163 Fed. Appx. 769 (11th Cir., 2005). Doc. cr-118

On December 21, 2006, Gomez timely filed his initial section 2255 motion. On February 26, 2007, after the Court ordered Gomez to file a new motion, conforming with the Rules Governing Section 2255 motions (Doc. cv-6), Gomez filed his amended section 2255 motion with an amended memorandum of law in support of his motion. Docs. cv-9, cv-12.

Gomez raises the following grounds for relief, claiming he received ineffective assistance of counsel when counsel failed to:

a. seek dismissal of the Indictment for violation of the Speedy Trial Act (Gomez's Ground 1, Doc. cv-9, p. 5),

b. investigate the confidential informant, (Gomez's Ground 1, Doc. cv- 9, attachment pp. 2-3);

c. interview witnesses of the investigatory stop, (Gomez's Ground 1, Doc. cv-9, attachment pp. 3-4);

d. challenge the investigatory stop, (Gomez's Ground 1, Doc. cv-9, attachment pp. 2-4);

e. challenge the Government's use of false testimony, (Gomez's Ground 2, Doc. cv-9, p. 6);

f. object to the Government's introduction of hearsay testimony at sentencing, (Gomez's Ground 3, Doc. cv-9, attachment p. 4);

g. properly raise a sufficiency argument on direct appeal, (Gomez's Ground 3, Doc. cv-9, p. 7).

In addition to Gomez's several claims of ineffective assistance of counsel, he also claims:

h. The Court violated his Fifth and Sixth Amendment rights when it held him responsible for 2,000 kilograms of marijuana, as opposed to the 100 kilograms or more listed in the Indictment and found by the trial jury (Gomez's Ground 4, Doc. cv-9, p. 9); and

i. The cumulative errors deprived Gomez of his rights to due process and a fair trial (Gomez's Ground 5, Doc. cv-9, attachment pp. 4-5).

Discussion

Gomez claims he received ineffective assistance of counsel prior to trial, at trial and on appeal.

Standard for Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of trial or appeallate counsel, Gomezr must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires Gomez to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance

component.

**Pre-trial Ineffective Assistance of Counsel, Grounds a-d**

Gomez claims his counsel provided ineffective assistance when counsel failed to seek dismissal of the Indictment for violation of the Speedy Trial Act (Ground a), investigate the confidential informant relating to the investigatory stop (Ground b); interview witnesses of the investigatory stop (Ground c); and challenge the investigatory stop (Ground d).

Regarding any challenges of violation of the Speedy Trial Act (Ground a) (See Doc. cv-12, pp. 2-5), Gomez waived his right to speedy trial on two occasions. Gomez first made an oral motion to waive speedy trial until December 31, 2003, at a status conference held on April 25, 2003 (Doc. cr-18), and made his second oral motion to waive speedy trial (this time until May 31, 2004) on August 15, 2003, at another status conference. Doc. 32.

Although Gomez recognizes the Speedy Trial Act makes several allowances for excludable time and lists several motions filed by both his co-defendant as well as himself which would have qualified as excludable time, he does not agree that any continuances are included. The Supreme Court recently held in *Zedner v. United States*, 126 S.Ct. 1976 (2006) that (1) a prospective "for-all-time" waiver by a criminal defendant of his rights under the Speedy Trial Act is invalid, (2) that the defendant is not judicially estopped by this waiver from moving to dismiss his indictment as untimely, and (3) that the trial court's failure to make the express findings required by the Act for an "ends of justice" continuance is not harmless error.

However, *Zedner* is not applicable in Gomez's case. Neither of his two oral motions for waiver of the Speedy Trial Act were open ended (or "for-all-time"). Each waiver was for a specific amount of time (i.e. December 31, 2003, and May 31, 2004). Further, in both

instances, the Court found "the ends of justice served by such continuance outweigh the best interest of the public and the defendant(s) in a speedy trial; this time is therefore, deemed EXCLUDABLE." Docs. cr-18, cr-32. Thus, there was no violation of the Speedy Trial Act.

Next, Gomez alleges counsel was ineffective for failing to investigate the confidential informant (CI) (Ground b), and interview witnesses relating to what Gomez calls an "investigatory stop" (Ground c). He further claims counsel failed to challenge the stop (Ground d). Doc. cv-12, pp. 5-9. Although Gomez makes several allegations as to what further investigation would have shown, he fails to provide any evidence to support his claims.

Counsel did, in fact, challenge the search and moved for suppression of the items seized from Gomez's person. Prior to trial, counsel for Gomez filed a motion seeking suppression of the items seized during the search of Gomez's person claiming Gomez's consent was not free and voluntary, similar to Gomez's current position. Doc. cr-38. A suppression hearing was held immediately prior to trial. Doc. cr-105, pp. 3-67. The record shows Gomez was seen by detectives leaving a house that smelled strongly of marijuana - a significant fact which Gomez omits in his argument that the Terry stop was based on an "unfounded hunch." While another detective was securing a search warrant to search the house, the detectives followed Gomez to an auto parts store parking lot. FBI Special Agent Gibson and Detective Redus approached Gomez and Balderas to ask them questions. Gomez gave Agent Gibson consent to search his person. Agent Gibson found a house key, later found to be a key for the house in question and also a yahtzee score card with names and amounts listed on it in a format typical of drug dealers. Doc. 105, pp.10 - 67.

In conclusion, this Court made the following statement:

It's the Court's responsibility in assessing the voluntariness of the Defendant's consent, and once again, we have to consider the totality of the circumstances and that has to include the knowledge of the constitutional right to refuse consent, the age and intelligence and language ability of the individual involved, the degree to which the individual cooperates with the police, the individual's attitude about the likelihood of the discovery of the contraband, and the length of the detention and the nature of the questioning including the use of physical punishment or coercive police behavior.

. . .

It appears to me from what I have heard that the defendant voluntarily answered the questions. The defendant's detention was not lengthy. The questioning was routine. It was conducted in a very civil manner. Considering the totality of the circumstances, the Court finds that the defendant voluntarily consented to the search of his person. Doc. cr-105, pp. 66-67. Thereafter, the Court denied the motion to suppress.

Doc. cr-56. Gomez demonstrates no prejudice resulting from his counsel's actions in this matter.

**Ineffective Assistance at Trial - Ground e**

Gomez also claims his counsel rendered ineffective assistance when counsel failed to challenge the Government's alleged prosecutorial misconduct through the use of false testimony. Gomez accuses the Government of using false testimony, namely that of Agent Gibson and Detective Redus at trial to secure Gomez's conviction. Doc. cv-12, pp. 9-14. This claim must fail because no false testimony was presented at trial or in the suppression hearing.

A conviction can be reversed on the basis of prosecutorial misconduct only "if that misconduct is so pronounced and persistent as to 'permeate the entire atmosphere of the trial.'" *United States v. Elkins*, 885 F.2d 775, 787 (11th Cir. 1989) (quoting *United States v. McLain,* 823 F.2d 1457, 1462 (11th Cir. 1987)). Furthermore, overwhelming independent

evidence of guilt "eliminates any lingering doubt that [a] prosecutor's remarks unfairly prejudiced the jury's deliberations." *Sawyer*, 799 F.2d at 1507 (quoting *Young*, 470 U.S. at 19, 105 S. Ct. at 1048-49).

The Government is not permitted to allow false evidence, even where unsolicited, to go uncorrected. *DeMarco v. United States*, 928 F.2d 1074, 1076 (11th Cir. 1991). This is true both of substantive and impeachment evidence. *Id.* Where a prosecutor fails to correct false testimony, a new trial is required only if "'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *United States v. Nixon*, 918 F.2d 895, 905 (11th Cir. 1990); *see United States v. Delgado*, 321 F.3d 1338, 1347 (11th Cir. 2003); *United States v. Oliveros*, 275 F.3d 1299, 1308 (11th Cir. 2001).[3]   Not surprisingly, "[t]he government has a duty not to exploit false testimony by prosecutorial argument affirmatively urging to the jury the truth of what it knows to be false. *Brown v. Wainwright*, 785 F.2d 1457, 1464 (11th Cir. 1986).

It is irrelevant whether the prosecutor believes the witness's false testimony is unwitting rather than knowing. The rule applies where testimony, "'even though technically not perjurious, would surely be highly misleading to the jury.'" *United States v. Rivera Pedin*, 861 F.2d 1522, 1530 n.14 (11th Cir. 1988) (quoting *Dupart v. United States*, 541 F.2d 1148, 1150 (5th Cir. 1976)). Reversal is not required, however, where, although the prosecutor improperly fails to correct the false testimony, defense counsel reveals the falsity through impeachment on cross-examination. *United States v. Knight*, 867 F.2d 1285, 1290 (11th Cir. 1989).

---

[3]   But see *United States v. Willis*, 759 F.2d 1486, 1502 (11th Cir. 1985) (Absent evidence that prosecution introduced evidence with knowledge of its falsity, defendants were not entitled to new trial even if testimony could have affected judgment of jury).

To substantiate his allegations of false testimony, Gomez makes a blanket assertion that Agent Gibson "made several material false statements." Doc. cv-12, p. 10. Although Gomez provides quotes from the transcripts of the suppression hearing, he provides no evidence of the alleged false testimony other than his own self-serving statements. In his argument, Gomez relies heavily on "common sense" because he has no evidence to support his allegations.

The only record site Gomez provides to support his claim of false testimony is the testimony of Agent Gibson at the suppression hearing where Agent Gibson testified that Gomez had given him (Agent Gibson) consent to search Gomez's person for weapons or needles. Under cross-examination by defense counsel, Agent Gibson stated he asked permission to search Gomez's pockets after patting him down. Gomez submits this "testimony clearly demonstrates an illegal involuntary search under *Minnesota v. Dickerson,* 508 U.S. 366 (1993)." Doc. cv-12, p. 13.

It appears Gomez is attempting to relitigate the entire suppression hearing. (See discussion above for summary of suppression hearing.) Neither Agent Gibson or Detective Redus lied at the suppression hearing or at trial. Gomez fails to provide any support to substantiate his allegation, nor can he prove any resulting harm when the evidence of his guilt at trial was overwhelming. Therefore, this claim is without merit.

**Ineffective Assistance at Sentencing - Ground f**

Gomez claims his counsel failed to object to the Government's introduction of hearsay testimony at sentencing, referring to the Government's reference to Tanya Hunt's testimony at trial about a charge of arson of which Gomez was previously acquitted. Doc. cv-12, pp. 18-19.

In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the Supreme Court held that held that the Confrontation Clause does not allow the admission at trial of "testimonial" statements of a witness who does not appear at the trial unless the witness is unavailable and the defendant has had prior opportunity to cross-examine him. "[T]he right to confrontation is a trial right[.]" *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987). However, *Crawford* does not apply to a proceeding other than trial. Indeed, the Eleventh Circuit and other courts have declined to extend the holding of *Crawford* to other types of non-trial court proceedings. See *United States v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005) (Crawford did not change prior law recognizing that right of confrontation does not apply to non-capital sentencing context and does not prohibit consideration of hearsay in sentencing proceedings), *cert. denied*, 126 S. Ct. 1604 (2006); *see also United States v. Martinez*, 413 F.3d 239, 242-43 (2d Cir.2005) (same); *United States v. Martin*, 382 F.3d 840, 844 & n.4 (8th Cir. 2004) (*Crawford* not applicable in supervised release revocation hearing).

At sentencing, in response to counsel's request for a sentence of 120 months, the mandatory minimum, the low end of the guidelines range, the Government asked for a sentence of 135 months, the high end of the guidelines. In so doing, the Government reviewed Gomez's criminal history and arrests, including Tanya Hunt's trial testimony, that Gomez set fire to her residence. Doc. cr-101, pp. 40-42. Prior arrests may be considered at sentencing under relevant conduct. Gomez faced an advisory guidelines range of 120 to 135 months at sentencing, including a mandatory minimum sentence of 120 months, and the Court sentenced him to 127 months. Doc. cr-101, p. 46. Gomez's sentence was not enhanced as the result of his prior arrests alone. Thus, Gomez incurred no prejudice as a

result of his counsel not opposing the testimony.

**Ineffective Assistance on Appeal - Ground g**

Gomez next claims his counsel was ineffective for not properly raising a sufficiency of the evidence issue on direct appeal. Doc. cv-12, pp. 15-18. Because Balderas' conviction for conspiracy was overturned on appeal for insufficient evidence, Gomez believes the same would have happened for him had counsel raised it properly.  Although counsel did adopt Balderas' issue on appeal, he did not submit an independent briefing. The Eleventh Circuit held that "it would not review a sufficiency of the evidence claim asserted by a defendant who did not submit independent briefing on his sufficiency argument." *United States v. Balderas*, 163 Fed. Appx. 769 (11th Cir., 2005).

However, even if the Eleventh Circuit did consider Gomez's challenge to the sufficiency of the evidence, the evidence was sufficient for the jury to find that Gomez had been overseeing the distribution of the marijuana stored at the stash house, that Balderas had been acting as Gomez's right-hand-man, and that Gomez had played an active role in the large marijuana distribution operation that had been functioning at the stash house. The evidence against Gomez was much greater than the proof against Balderas. Gomez was carrying the key to the stash house and the drug tally sheet bearing his own name when he and his best friend, Balderas, drove in the van from the stash house to the auto parts store. Doc. cr- 106, pp. 36-43, 48-56, 83-84, 102, 104, 106, 152-53; Doc. cr-107, pp. 25-26, 57, 60-61, 102-03, 117-21, 124-25, 128-30, 140-41, 146-47, 159-60, 162-63, 168-76, 179-85, 244. At the auto parts store, Gomez, Balderas, and the van all smelled like marijuana, and Gomez lied to the detectives to protect the marijuana-laden stash house and conceal his participation in the conspiracy. Doc. cr-106, pp. 45-46, 82-83, 107, 135-36,

140; Doc. cr-107, pp. 122-24, 148, 165-66. Inside the stash house, the detectives found 1522 pounds of marijuana worth at least $725,000 and possibly more than $2 million that was being prepared for distribution in plain view, packaging material, scales, a samurai sword containing marijuana residue, mail addressed to Gomez at that address, and Yahtzee game score cards similar to the drug tally sheet that had been found in Gomez's pocket. Doc. cr-106, pp. 56-57, 59, 74-76, 85, 108, 142-43, 152-59, 161, 167-68, 191, 194-95, 211-14; Doc. cr-107, pp. 56, 63- 64, 132-34, 140-43, 168-74, 248. In light of this evidence and all of the other evidence, including, but not limited to, Gomez's conduct in the days leading up to the search and his interaction with other individuals who had been linked to the stash house, Doc. cr- 107, pp. 19, 24, 27-29, 31-32, 37-43, 59-63, 219-20, 222-30, 235, 237, 244, 253-55, 262- 63, the jury was entitled to find Gomez guilty on both the conspiracy count and the possession count. Therefore, because Gomez has failed to demonstrate any prejudice resulting because of counsel's actions, he has failed to meet both *Strickland* prongs, and his claims of receiving ineffective assistance of counsel have not merit.

## PRIOR RESOLUTION

Prior resolution bars reconsideration of Gomez's claim that the Court violated his Fifth and Sixth Amendment rights when it held him responsible for 2,000 kilograms of marijuana, as opposed to the 100 kilograms or more listed in the Indictment and found by the trial jury (Ground i). Doc. cv-12, pp. 19-22. Gomez raised this claim on direct appeal and, as discussed above, the Eleventh Circuit resolved the issue against him on November 22, 2005. The United States Court of Appeals for the Eleventh Circuit affirmed the disposition of this case, *United States v. Balderas*, 163 Fed. Appx. 769 (11th Cir., 2005).

Generally, claims raised and disposed of in a previous appeal are precluded from reconsideration in a Section 2255 proceeding. *Davis v. United States,* 417 U.S. 333 (1974); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).

On appeal, counsel for Gomez raised this issue:

Whether the district court's application of the federal sentencing guidelines in determining Gomez's statutorily mandated sentencing guideline range violated the fifth amendment indictment and due process clauses and the sixth amendment right to jury trial, where the district court imposed a eight-level upward adjustment in the base offense level premised on a quantity of drugs not charged in the indictment and as to which Gomez did not waive his trial rights.

Attachment 1 (Appeal Issue II), pp. 23-31. With the full record before it, the Eleventh Circuit concluded:

During the sentencing hearing, the district court never indicated that, but for the Guidelines, it would have given [Gomez] a different sentence. On the contrary, the court noted that [Gomez]'s lack of education and ability to do a job caused him to turn to a life of crime. It also noted that the statutory minimum was 120 months and the Government requested the Guidelines maximum of 135 months. However, the court stated that, because [Gomez] had "been a bad person," it was sentencing him in the middle, at 127 months, only 7 months above the statutory minimum. Nothing in the record indicates that, if it had to resentence [Gomez], the district court would have imposed a different sentence. Accordingly [Gomez] cannot establish that his substantial rights were violated by the district court's error. *See United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005); United States v. Shelton, 400 F.3d 1325, 1332 (11th Cir. 2005).

*United States v. Balderas*, 163 Fed.Appx. 769 (11th Cir., 2005); Doc. cr-118.

Gomez has established no extraordinary circumstance that would justify reconsideration of these claims. *See Schlup v. Delo*, 15 S. Ct. 851 (1995); *Davis v. United States*, 417 U.S. 333 (1974). Therefore, Gomez's claims are procedurally barred, and, in addition, have no merit.

CUMULATIVE ERROR

Last, Gomez claims the cumulative errors presented in his motion, and addressed herein, deprived Gomez of his rights to due process and a fair trial (Ground i). Doc. cv-12, p. 22. However, Gomez is unable to demonstrate any error. Because Gomez does not demonstrate error in connection with his individual complaints, as fully discussed above, he certainly cannot demonstrated cumulative error. *See United States v. Taylor*, 417 F.3d 1176, 1183 (11th Cir.), *cert. denied*, 126 S. Ct. 768 (2005) ("There being no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant]'s convictions is without merit."). Even if this Court were to conclude that errors were made as Gomez alleges, Gomez's substantial rights would not have been affected because properly admitted evidence proved his guilt of the charged offenses. *See U.S. v. Adams,* 74 F.3d 1093, 1099-100 (11th Cir. 1996). Gomez is not entitled to relief on this ground.

**Accordingly, the Court orders:**

That Gomez's motion to vacate  (Doc. cv-9; cr-128) is denied, with prejudice.  The Clerk is directed to enter judgment against Gomez in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"

*Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 5, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA:  W. Stephen Muldrow
Israel Gomez, pro se